UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE FRENCH,

    Plaintiff,

v.

PROVIDENCE EVERETT MEDICAL CENTER,

    Defendant.

Case No. C07-0217RSL

ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant Providence Everett Medical Center ("PEMC"), plaintiff's former employer, and on a cross motion for partial summary judgment filed by plaintiff. Plaintiff contends that after PEMC received some of her confidential medical information in error, it took a series of adverse actions against her, including placing her on administrative leave, medically discharging her, and selecting candidates for open positions who were less qualified than plaintiff.[1]

For the reasons set forth below, the Court grants in part and denies in part both motions.

---

[1] The Court heard oral argument in his matter on September 3, 3008.

## II. DISCUSSION

**A. Background Facts.**

Plaintiff Julie French worked for PEMC as an administrative supervisor from 1989 until 2005. Her job duties included making administrative decisions, working closely with the staffing office and charge nurses to ensure appropriate staffing, and generally making sure that hospital operations were running smoothly. Plaintiff was also a "green belt," which included analyzing hospital operations to make recommendations to improve processes and save money.

Plaintiff has Charcot-Marie Tooth disease, a type of muscular dystrophy. Plaintiff was injured on the job while working at PEMC in November 2003. French received workers' compensation for her injury and the claim was closed in August 2004. Plaintiff performed her job with a mobility assistance dog and arm braces. PEMC purchased a motorized scooter for her to use at work.

Dr. Jennifer Carl treated plaintiff for her workers' compensation injury and saw French on June 20, 2005. On or around July 8, 2005, Jeff Anderson, a claims adjustor for Constitution State Services ("CSS"),[2] PEMC's third party workers' compensation administrator, received a copy of a note regarding the June 20th visit from Dr. Carl's billing service (the "note"). The note stated in relevant part:

> While she continues to do a fair amount of walking on-the-job using bilateral forearm crutches, she is now falling two to four times per week. She usually finds that she suddenly goes down to her knees. She has not had injuries beyond knee bruising to date.
>
> Clearly for safety given her increased number of falls and underlying bone disease, she needs better support walking and can tolerate walking less than she is currently.

Declaration of Matthew Bean in Support of Plaintiff's Motion, (Dkt. #124) ("Bean Decl. in Support"), Ex. 3. It is undisputed that the service sent the note in error. After Anderson received the note, he read it, underlined portions of it, then forwarded it to a representative at

---

[2] Plaintiff has settled her claims against Dr. Carl and CSS. PEMC is the only remaining defendant in this case.

PEMC. The note was sent to plaintiff's supervisor, Marie Wiehle (then Hunsaker). On July 8, 2005, Wiehle called her second-level supervisor, Assistant Administrator, Chief Nurse Executive Elli Olson and paraphrased the note to her. Olson instructed her to place plaintiff on paid administrative leave immediately. Plaintiff was on involuntary paid administrative leave until she applied for FMLA leave one week later.

During her leave, PEMC repeatedly requested to meet with plaintiff to discuss how her current accommodations were working and whether she needed any additional accommodations. Foster Dep. at p. 101; Carillo Dep. at pp. 24-25. Plaintiff and PEMC representatives attempted to schedule meetings for various days, but were unable to find a mutually agreeable date. After plaintiff stated that she would not discuss meeting with PEMC until her next regularly scheduled work day, PEMC sent plaintiff a letter dated July 15, 2005 explaining that she was being placed on unpaid leave due to her refusal to meet with PEMC. Declaration of Manuel Carillo, (Dkt. #127) ("Carillo Decl."), Ex. 12.

Plaintiff subsequently applied for FMLA leave until August 6, 2005 based on "stress." Carillo Decl., Ex. 13. Her request was granted. Plaintiff contends that she wanted to return to work, but every time she received a letter from PEMC requesting a meeting, it exacerbated her symptoms. French Dep. at p. 139. As a result, she requested an extension of her FMLA leave. Id. at p. 140.

During her deposition, plaintiff testified that she did not plan to meet with PEMC representatives. French Dep. at p. 137. Plaintiff believed that they already had all of the information they needed about her work restrictions and need for accommodation, and the ADA precluded further inquiry into her medical records. Id. at pp. 135-36.

While she was on FMLA leave, plaintiff applied for two other positions at PEMC: Clinical Analyst and Green Belt/Lean Leader She was not interviewed or hired for either position.

On September 20, 2005, plaintiff sent a letter to PEMC stating, "Enclosed please find a

letter from my doctor in which she medically discharges me from employment at [PEMC]. This medical discharge is a result of the Medical Center's actions taken against me since July 8, 2005." Carillo Decl., Ex. 16. The attached letter, from psychiatrist Susan Clark, states that she has treated plaintiff since July 2001 and that "[a]s a result of the recent incidents suffered by my patient at [PEMC], I recommend that Julie not return to work. It is contraindicated and not in Julie's best interest to return to work. Julie needs to be medically discharged from employment at [PEMC]." Id. PEMC offered to extend plaintiff's leave for another six months, but plaintiff declined.

Plaintiff filed her complaint in state court in January 2007, and defendants removed the case to this Court. French asserts claims against PEMC for disability discrimination, harassment, and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq.* She also alleges that Providence violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Consumer Protection Act, RCW 19.86 *et seq.*, the Health Care Patient Bill of Rights, RCW 48.43 *et seq.* and the Uniform Health Care Information Act. RCW 70.02 *et seq.* She also asserts claims for common law invasion of privacy, and negligent and intentional infliction of emotional distress.

**B.  Summary Judgment Standard and Evidentiary Issue.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

On a motion for summary judgment, the Court must "view the evidence in the light most

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 4

1 favorable to the nonmoving party and determine whether there are any genuine issues of material
2 fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences
3 supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v.
4 Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might
5 resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W.
6 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The
7 mere existence of a scintilla of evidence in support of the non-moving party's position is not
8 sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).
9 "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from
10 which a reasonable jury could return a verdict in its favor." Id. at 1221.

PEMC has filed a report from an expert witness, University of Washington Professor Paul Miller, in which he opines about whether PEMC and plaintiff "engage[d] in the interactive process in good faith as required by the ADA." Declaration of Boris Gaviria, (Dkt. #126) ("Gavaria Decl."), Ex. D at p. 5. The Court has not considered the report because it contains opinions on legal issues reserved for the Court.

**C.     Analysis.**

As an initial matter, plaintiff concedes that her claims for negligent and intentional infliction of emotion distress should be dismissed. She also concedes that dismissal is appropriate for her state law claims under the Consumer Protection Act, the Uniform Health Care Information Act, and the Patient's Bill of Rights. Accordingly, those claims are dismissed with prejudice.

    **1.     ADA Claims.**

        **a.     Discrimination.**

To establish a prima facie case of discrimination under the ADA, plaintiff must prove that (1) she is a person with a disability; (2) she is otherwise qualified for the position, meaning she is able to perform the essential functions of the job, with or without reasonable accommodation;

and (3) she was subjected to an adverse employment action because of her disability. See, e.g., Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996). Defendant concedes that plaintiff is a person with a disability under the ADA and the WLAD. Plaintiff contends that PEMC discriminated against her based on her disability by placing her on involuntary leave after receiving Dr. Carl's note, by requiring her to remain on involuntary leave until she applied for FMLA leave, by refusing to hire her for two positions while she was on leave,[3] and by constructively discharging her.

PEMC contends that placing plaintiff on involuntary leave did not constitute an adverse action because the leave was paid. However, PEMC precipitously changed plaintiff's leave status to unpaid on July 15. Accordingly, plaintiff suffered an adverse action. The issue of whether the paid portion of the leave was an adverse action is an issue for the jury to resolve.[4]

---

[3] PEMC argues that plaintiff's complaint did not include a disparate treatment claim. However, plaintiff asserts a claim for "disability discrimination." Amended Complaint at Count I. Although the allegation is vague, PEMC did not request a more definite statement. Similarly, PEMC contends that plaintiff's complaint did not assert a claim for constructive discharge, but she argues that she was medically discharged "as a result of Defendants' wrongful and illegal conduct." Id. at ¶ 27. These allegations are sufficient to give PEMC notice of the claims asserted.

[4] The Ninth Circuit has not addressed whether placing an employee on involuntary paid leave is an adverse action, although other circuits have concluded that it is not. See, e.g., Nichols v. Southern Ill. Univ.-Edwardsvile, 510 F.3d 772, 786 (7th Cir. 2007). The Supreme Court has explained that an employee alleging that he or she suffered an adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from engaging in protected activity." Burlington Northern v. White, 126 S. Ct. 2405, 2415 (2006) (internal citation omitted). In this case, although plaintiff was hired as a .6 full time equivalent, in the months prior to her leave she was working essentially full time. Plaintiff alleges that during her involuntary leave, she was not paid accordingly, but PEMC alleges that she was paid for all of her scheduled shifts. Carillo Dep. at pp. 22-23. Plaintiff also alleges that as a result of being removed from her job, she "felt isolated, stigmatized, ashamed and not wanted at PEMC." Declaration of Julie French in support of her motion for summary judgment (Dkt. #123) ("French Decl. in Support") at ¶ 21. Whether plaintiff was fully paid and suffered an adverse action are therefore issues for the jury.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 6

1       PEMC argues that even if plaintiff suffered an adverse action, it was entitled to remove plaintiff from her job because she was not otherwise qualified: she could not make rounds throughout the building or respond to emergency cardiac codes. However, there is no evidence that plaintiff was unable to perform her job duties or that she was not performing satisfactorily. In fact, her supervisor states that plaintiff was able to perform the essential functions of her position. Williams Dep. at pp. 11, 23. In addition, by asserting that plaintiff might have injured herself or compromised patient safety, PEMC is asserting the direct threat affirmative defense. An employer asserting that defense must show that, based on the best evidence available, the employee poses a significant risk of substantial harm that cannot be eliminated with a reasonable accommodation. <u>Echazabal v. Chevron USA, Inc.</u>, 336 F.3d 1023, 1027 (9th Cir. 2003) (citing 42 U.S.C. § 12111(3)). In this case, the record does not support PEMC's defense. Plaintiff did not respond to codes as a health care provider, which undermines PEMC's alleged concern for patient safety.[5] Foster Dep. at p. 25. Before PEMC representatives placed plaintiff on leave, they did not discuss her ability to respond to codes, Carillo Dep. at p. 89, or the likelihood that plaintiff would actually injure herself at work. Wiehle Dep. at pp. 52, 59. No one at PEMC ever requested further information or clarification from Dr. Carl.

      PEMC also argues that plaintiff is precluded from asserting that she was able to perform her job with accommodations because she failed to engage in the interactive process. PEMC was entitled and indeed, obligated, to engage in the interactive process with plaintiff after receiving the note. The issue, however, is whether it wrongfully removed plaintiff from her job pending resolution of that process. If a jury finds that placing plaintiff on paid leave was an adverse action, then PEMC discriminated against her by removing her from her position and placing her on administrative leave without evidence that plaintiff was unable to perform the

---

[5] Instead of providing patient care, plaintiff would respond to codes "to document the process and to make sure that things were going okay, and that patient care needs were being met." Foster Dep. at p. 25. Although plaintiff falling could have some impact on patient safety, PEMC has not shown a significant risk of substantial harm.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 7

essential functions of her job or that she constituted a direct threat. If a jury finds that the paid leave was not an adverse action, then it will need to resolve whether PEMC's decision to place her on unpaid leave was discriminatory or the result of plaintiff's failure to engage in the interactive process.[6] Accordingly, summary judgment is not warranted.

Plaintiff also alleges that PEMC discriminated against her and/or retaliated against her by refusing to consider her for either of two open positions while she was on FMLA leave. PEMC cannot excuse its decision not to hire plaintiff based on her alleged failure to engage in the interactive process. Once plaintiff was on FMLA leave, PEMC was entitled to obtain a release from her physician stating that she was able to return to work and stating any necessary restrictions. Declaration of Julie French Decl. in Opposition to PEMC's Motion, (Dkt. #131) ("French Decl. in Opposition"), Ex. 22. PEMC has not explained why it allegedly needed to meet with French, before interviewing her for another position, to discuss accommodations even if she ultimately provided a release. Nevertheless, plaintiff's claim based on her non-selection for the Clinical Analyst position poses issues of fact. On one hand, plaintiff declined PEMC's offer to interview for the position. PEMC created the position with the expectation that she could apply and be considered for the job, which undermines the assertion that PEMC had discriminatory animus. She testified during her deposition that she was "emotionally and physically" unable to interview for the position. French Dep. at p. 156. On the other hand, plaintiff alleges that PEMC's conduct caused her the very stress that precluded her from working or interviewing. Also, plaintiff believed that it would be "pointless" to interview because PEMC's web site indicated that she had withdrawn from consideration and she was told that

---

[6] PEMC alleges that plaintiff unreasonably failed to engage in the interactive process by refusing to meet with Wiehle present and by refusing to attend another meeting PEMC scheduled unless she could bring her potentially violent son. Plaintiff alleges that PEMC unreasonably changed her status to unpaid because she could not attend a meeting on a day she had a previously scheduled doctor's appointment. PEMC did not respond to plaintiff's query to schedule the meeting for a date after the doctor's appointment.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 8

PEMC would not interview her until it resolved accommodation issues regarding her current job. The law does not require an employee to engage in a "futile gesture" before claiming discrimination. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 366 (1977). Because the evidence could give rise to two different inferences, the Court declines to grant summary judgment on this claim.

Plaintiff also alleges that PEMC violated the ADA by requiring her to discuss accommodation issues before it would interview her for the Clinical Analyst position. Carillo 30(b)(6) Dep. at pp. 44-45, 47-48. Plaintiff cites language from the ADA prohibiting employers from asking applicants whether they have a disability or the nature or severity of the disability. 42 U.S.C. § 12112(d)(2)(A). However, PEMC already knew that plaintiff had a disability. The ADA permits an employer to ask about an applicant's ability to perform job-related functions. See, e.g., 42 U.S.C. § 12112(d)(2)(B). Therefore, the request to discuss accommodations was not in itself unlawful.

As for the Green Belt/Lean Leader position, PEMC contends that the hiring manager, Doug Upson, contacted her to interview for that position, but plaintiff did not respond. Carillo Decl. at ¶ 19. Plaintiff's failure to respond is not surprising given that Upson was attempting to contact her at work while she was on FMLA leave. In fact, Upson contacted Wiehle, who explained that she did not know when plaintiff would return from leave. Wiehle did not inform plaintiff that Upson was attempting to reach her, and he does not recall contacting her at home. Upson states that, based on their resumes and the minimum qualifications, plaintiff was more qualified for the position than the person who was hired. Upson Dep. at p 38. Accordingly, PEMC is not entitled to summary judgment on this claim.[7]

    **b.    Accommodation.**

As plaintiff correctly notes, this is not an accommodation case because she is not alleging

---

[7] Plaintiff does not contend that she is entitled to summary judgment on her non-selection claim.

that PEMC failed to provide her with a necessary accommodation. Rather, she asserted a failure to accommodate claim in the alternative, in case the Court found that she was not able to perform the essential functions of her job. In that case, plaintiff would argue that PEMC had a duty to accommodate her. Because the Court has found that plaintiff was able to perform the essential functions of her job, plaintiff's failure to accommodate claim is dismissed as moot.

### c. Hostile Work Environment.

To establish a prima facie case of hostile work environment based on her disability, plaintiff must prove that (1) she was subjected to verbal or physical conduct because of her protected class; (2) the conduct was unwelcome; (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (4) the conduct may be imputed to the employer. See, e.g., Manatt v. Bank of America, NA, 339 F.3d 792, 801 (9th Cir. 2003). Plaintiff does not allege that PEMC made negative comments to her about her disability or about people with disabilities generally. Indeed, plaintiff was not in the work environment during the time that she alleges it was hostile.

Instead, she alleges that PEMC created a hostile work environment by removing her from her position and repeatedly attempting to meet with her regarding the contents of the note. PEMC's contacts with plaintiff were not hostile in their content or frequency. PEMC had a right to discuss the potential need for additional accommodations with plaintiff. Plaintiff also argues that PEMC created a hostile work environment by removing her from her position and failing to hire her for either of the positions she applied for during her leave. Those actions, singly or together, did not create a hostile work environment. Rather, they are analyzed elsewhere in this order as potential acts of discrimination and retaliation.

### d. Constructive Discharge.

Plaintiff alleges that she was constructively discharged from her position as a result of

discrimination and retaliation.[8] Under the doctrine of constructive discharge, "an involuntary or coerced resignation is equivalent to a discharge." Bulaich v. AT&T Info. Sys., 113 Wn.2d 254, 258-59 (1989). Plaintiff must show that "(i) the employer deliberately made the working conditions intolerable, (ii) a reasonable person would be forced to resign, (iii) the employee resigned solely because of the intolerable conditions, and (iv) the employee suffered damages." Allstot v. Edwards, 116 Wn. App. 424, 433 (2003); see also Brooks v. San Mateo, 229 F.3d 917, 930 (2000).

Plaintiff argues that she was forced to resign because of the stress caused by PEMC's illegal employment practices. Plaintiff's treating psychiatrist linked PEMC's conduct to plaintiff's need for a medical discharge. After PEMC received that letter, it offered plaintiff an additional six months of leave, which she declined. She has not explained, or presented any medical evidence to explain, why the additional leave was unworkable. Nevertheless, a jury could conclude, particularly from the letter from Dr. Clark and PEMC's alleged refusal to return her to work or interview her for other positions, that PEMC deliberately made her working conditions intolerable. Therefore, PEMC is not entitled to summary judgment on plaintiff's constructive discharge claim.

### 2. Retaliation.

The elements of a prima facie case of retaliation include a (1) statutorily protected activity, (2) an adverse employment action, and (3) a causal link between the two. See, e.g., Miller v. Fairchild Indus., 797 F.2d 727, 730 (9th Cir. 1986). Plaintiff alleges that she was retaliated against for filing a previous workers' compensation claim, for applying for FMLA leave, and for exercising her rights under the ADA and the WLAD. PEMC argues that plaintiff's retaliation claim fails for two reasons. First, she did not suffer any adverse

---

[8] An employer cannot terminate an employee based on his or her use of FMLA leave or consider it as a "negative factor" in making employment decisions. 29 U.S.C. § 2615(a)(1); Liu v. Amway Corp., 347 F.3d 1125, 1133 n.7 (9th Cir. 2003).

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 11

employment action. However, plaintiff was removed from her position, placed on involuntary leave, denied two positions while on leave, and allegedly constructively discharged. These actions could constitute adverse actions.

Second, PEMC argues that there is no causal link between the protected activity and an adverse employment action because it had legitimate, non-discriminatory reasons for its decisions. There is no direct evidence of a retaliatory motive. An inference of a retaliatory motive may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the alleged retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987); Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 507 (9th Cir. 2000). In this case, PEMC did not hire plaintiff for two positions shortly after she applied for and took FMLA leave. She was undisputedly qualified for both positions. This evidence is sufficient to allow plaintiff's FMLA retaliation claim to proceed to a jury.

However, the Court grants PEMC's motion to dismiss plaintiff's retaliation claim based on the ADA, WLAD, and the workers' compensation statute. Other than requesting and taking FMLA leave, plaintiff did not engage in other protected activity during the relevant time. Plaintiff was granted accommodations and filed a workers' compensation claim in 2003. The two-year gap between those actions and the adverse actions in 2005 do not raise any inference of retaliation. See, e.g, Clark County v. Breeden, 532 U.S. 268, 273 (2001) (explaining that the time period in between protected activity and an adverse action must be "very close" to establish a causal connection). Therefore, the adverse actions about which she complains are more appropriately analyzed as acts of discrimination and wrongful discharge rather than retaliation.

### 3. FMLA Claim.

Plaintiff contends that PEMC violated her FMLA rights by requesting on three occasions that she sign a form to release her medical records to PEMC. Plaintiff seeks an injunction prohibiting PEMC from requiring employees to provide a medical release as part of their

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 12

FMLA's applications. The FMLA does not permit employers to request employees' medical records based solely on their request for FMLA leave. Rather, employers are permitted to request a certification from the employer's physician of the need for leave and a request for a release to return to work. 29 U.S.C. § 2613; 29 C.F.R. § 825.306(b).

PEMC challenges plaintiff's standing to bring that claim, but because plaintiff has applied for other positions at PEMC, she has standing to bring the claim. However, plaintiff has not shown the possibility of irreparable injury or that the balance of hardships tips in her favor. The form about which plaintiff complains states that a release should be completed "if applicable." Gaviria Decl., Ex. 4. In fact, plaintiff was not required to release her medical records. She never completed the release, but she was permitted to take FMLA leave as requested.[9] Accordingly, her request for an injunction under the FMLA is denied.

### 4. WLAD Claim.

Plaintiff's WLAD claim is based on the same allegedly wrongful actions that underlie her ADA claim. PEMC argues that her WLAD claim fails as a matter of law because PEMC is exempt as a religious institution. The definition of a covered "employer" under the WLAD "does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(3). Plaintiff argues that the statute is unconstitutional because, to the extent that it exempts non-religious discrimination, it violates the establishment clause. The issue is an open one in Washington. See, e.g., Hazen v. Catholic Credit Union, 37 Wn. App. 502, 507 (1984) (noting, without deciding, that "[i]n fact, permitting a religious organization to discriminate on any basis, other than religion, may violate the equal protection and establishment clauses of the United States Constitution"). However, this Court need not decide the issue because it finds that

---

[9] Plaintiff argues that in Hashimoto v. Dalton, 118 F.3d 671, 675-76 (9th Cir. 1997), the court squarely rejected a "no harm, no foul" argument in the Title VII context, explaining that the lack of a foul is relevant to the availability of remedies but not to whether a violation occurred. In this case, plaintiff is seeking a remedy, an injunction, but has not shown that she or anyone else suffered or is likely to suffer any harm.

PEMC is estopped from arguing that it is exempt from Washington law. A party may be subject to estoppel when (1) the party to be estopped knows the facts; (2) he intends that his conduct shall be acted on or so acts that the party asserting the estoppel has a right to believe it is so intended; (3) the latter is ignorant of the true facts; and (4) he relies on the former's conduct to his injury. Cann v. Carpenters Pension Trust, 662 F. Supp. 501, 508-09 (C.D. Cal. 1987) (citing Ellenburg v. Brockway, Inc, 763 F.2d 1091, 1096 (9th Cir. 1985)). PEMC's EEO policy states:

> PEMC supports the principles of equal employment opportunity and will not discriminate with respect to race, color, religion, sex, national origin, age, creed, the presence of a disability, marital or veteran's status, or any other basis prohibited by local, state or federal laws in any aspect of its employment or pre-employment practices.

Second Declaration of Boris Gaviria, (Dkt. #133), Ex. 6. French contends that she read and relied on the EEO policy during her employment. French Decl. in Support at ¶¶ 16, 17. An estoppel argument is available in this context. See, e.g., Farnam v. CRISTA Ministries, 116 Wn.2d 659, 678 (1991) (analyzing claim that employer was estopped from asserting the WLAD exemption for religious organizations). PEMC does not challenge most of the elements of the claim. Rather, it argues that "[t]here is no evidence that Providence holds itself out as an employer that agrees to be subject to the WLAD." However, the policy specifically states that PEMC will not discriminate on any basis prohibited by state law. The statement is not qualified by "as applicable." Indeed, a PEMC manager testified during her deposition that it was reasonable for plaintiff to believe that PEMC would comply with local and state laws. Foster Dep. at pp. 68-69. Accordingly, PEMC is estopped from arguing that it is exempt from plaintiff's WLAD claim.

### 5. Wrongful Discharge in Violation of Public Policy.

Plaintiff alleges that she was wrongfully discharged in violation of public policy. If a jury concludes that plaintiff was not constructively discharged, then she cannot pursue this claim. Even if plaintiff can show that she was constructively discharged, her claim fails to the extent it is based on her disability or taking FMLA leave because Washington has declined to

expand the tort to include discharges for which other remedies are available. See, e.g., Korslund v. Dyncorp Tri-Cities Servs., Inc., 156 Wn.2d 168, 183 (2005). Because plaintiff has statutory remedies available, her wrongful discharge claim based on those issues is dismissed.

Plaintiff also contends that she was constructively discharged to prevent her from filing a workers' compensation claim. An employee may pursue a claim for wrongful discharge in violation of public policy if he or she was discharged for filing a workers' compensation claim or communicating an intent to do so to the employer. Wilmot v. Kaier Aluminum & Chem. Corp, 118 Wn.2d 46, 71-72 (1991). In this case, plaintiff had filed a prior workers' compensation claim. PEMC's third party administrator expressed concern that she would fall and file another claim, so he forwarded the note to PEMC. PEMC immediately removed plaintiff from the workplace. A reasonable jury could conclude that PEMC did so and refused to return her to work to avoid another workers' compensation claim. Accordingly, if a jury finds that plaintiff was constructively discharged, they can consider whether the discharge was motivated by a desire to avoid another workers' compensation claim. PEMC's motion to dismiss plaintiff's wrongful discharge claim based on a workers' compensation theory is denied.

### 6. Common Law Invasion of Privacy.

To support her invasion of privacy claim, plaintiff must show that both publication and the information disseminated were "highly offensive to a reasonable person." Fisher v. State ex rel. Dep't of Health, 125 Wn. App. 869, 879-80 (2005). Plaintiff contends that PEMC violated her privacy because Wiehle disclosed the note to three people: plaintiff's second and third level supervisors and to plaintiff's human resources representative. In essence, plaintiff argues that because the note was sent in error, PEMC managers should not have inquired about the note or discussed it among themselves. However, once PEMC received the note and became aware that plaintiff could not tolerate as much walking as she was doing, PEMC was obligated to evaluate the available evidence to determine whether managers needed to engage plaintiff in the interactive process and/or offer additional accommodations, and to evaluate whether plaintiff

posed a direct theat to herself and others.  PEMC could have been held liable for failure to engage in the interactive process if managers had simply ignored the note.  In addition, given that both the contents and transmission of the note were very unusual, it is understandable that Wiehle sought guidance from upper level management on how to proceed.[10]

Moreover, there is no evidence that PEMC disseminated the note beyond plaintiff's immediate management team.  Finally, plaintiff has filed the note in this case on a public web site without moving to seal and without redacting the document.  Under these circumstances, plaintiff has not shown that disclosure of the note would be highly offensive to a reasonable person.  PEMC is entitled to summary judgment on this claim.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART both defendant's motion for summary judgment (Dkt. #125) and plaintiff's motion for partial summary judgment (Dkt. #122).  The Court grants plaintiff's motion based on her argument that PEMC is estopped from asserting the religion exemption to the WLAD.  The Court denies the remainder of plaintiff's motion.

The Court grants PEMC's motion and dismisses plaintiff's claims for failure to accommodate; hostile work environment; retaliation for exercising rights under the ADA, the WLAD, and the workers' compensation statute; common law invasion of privacy; and wrongful discharge in violation of public policy based on her disability or the exercise of her rights under the FMLA.  The Court also dismisses plaintiff's claim for an injunction under the FMLA.  The Court denies the remainder of PEMC's motion.  Plaintiff may pursue her claims for disability discrimination in violation of the ADA and the WLAD, retaliation for taking FMLA leave, and

---

[10] Plaintiff also alleges that PEMC violated the ADA by disclosing the note to her supervisors.  The provision of the ADA that she cites, however, does not apply to or prohibit the conduct that occurred in this case.  Plaintiff's Motion at p. 15 (citing 42 U.S.C. § 12112(d)(4)(C)).  Instead, it refers to information obtained from an employer's on-site health program or from employers' inquiries to employees.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 16

for wrongful discharge in violation of public policy to prevent her from filing another workers' compensation claim.

The Court had previously stricken the trial date and related dates pending resolution of these motions. As the Court stated during oral argument, the Court's judicial assistant, Teri Roberts, will contact the parties to schedule a telephone conference to discuss scheduling matters.

DATED this 8th day of September, 2008.

*[signature]*
Robert S. Lasnik
United States District Judge